UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL MOHAMMED CANON                                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:15CV9TSL-RHW

THE BOARD OF TRUSTEES OF STATE
INSTITUTIONS OF HIGHER LEARNING OF
THE STATE OF MISSISSIPPI; JACKSON
STATE UNIVERSITY; AND TOR A. KWEMBE,
Ph.D., IN HIS INDIVIDUAL CAPACITY,
FOR STATE LAW CLAIMS                                     DEFENDANTS


MEMORANDUM OPINION AND ORDER

Plaintiff Michael Mohammed Canon, a former employee of

Jackson State University, filed the present action under Title VII

of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*,[1] complaining

of national origin discrimination, race discrimination and

retaliation.  Originally, Canon named as defendant "The Board of

Trustees of State Institutions of Higher Learning of the State of

Mississippi d/b/a Jackson State University."  The Board of

Trustees of State Institutions of Higher Learning of the State of

Mississippi (IHL) promptly moved to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6), contending that Jackson State

University (JSU) and IHL are not "one and the same", as

---

[1]      Plaintiff states in a memorandum brief to the court that
"[w]hile the Complaint does not cite the Civil Rights Act of 1964,
42 U.S.C.A. § 2000, *et seq.*, a citation is not necessary since it
is clear that this is the statute under which the action is
brought.  Johnson, et al. v. City of Shelby, Mississippi, 135 S.
Ct. 346, 347 (2014)."

plaintiff's allegations seemed to suggest, but were separate legal entities, and that IHL was due to be dismissed as plaintiff had failed to plead any facts involving IHL or suggesting any wrongful conduct by IHL.  Rather than respond to the motion to dismiss, plaintiff moved to file an amended complaint.  That motion was granted as unopposed.  Plaintiff's amended complaint retained IHL as a defendant but added JSU as a defendant.  Plaintiff also named as a defendant Tor A. Kwembe, his supervisor at JSU, against whom he asserted a state law claim for tortious interference with contract.[2]

In his original and amended complaints, Canon, who is of Iranian national origin, alleges he was employed as a mathematics instructor at JSU for over twenty-six years.  Kwembe, who is Nigerian, was hired in 2003 as Chair of the Mathematics Department.  According to the complaint, before Kwembe was hired, there had been no issues with Canon's performance; however, Kwembe "had an enormous prejudice against Iranians" and "treated plaintiff differently from other faculty members," giving him poor evaluations and claiming, without any basis in fact, that plaintiff was a poor performer.  Canon alleges that because of

---

[2]     On September 21, 2015, plaintiff was granted leave to file a second amended complaint.  By this filing, plaintiff sought only to append a recently received right to sue letter related to his third EEOC charge and did not purport to make any other changes to the second amended complaint.

Kwembe's influence, he was paid less than persons of non-Iranian origin.  Canon further asserts that after (and as a result of) his and other faculty members' complaints about Kwembe's lack of qualifications and poor job performance, Kwembe entertained hostility against Canon and harassed him over petty matters. Canon alleges he complained to Dean Richard Alo, and to JSU Provost James Rennick and JSU President Carolyn Meyers, about the "unfair and biased treatment" to which he was subjected by Kwembe, and on April 9, 2014, plaintiff filed his first charge of discrimination with the Equal Employment Opportunity Commission (EEOC), complaining of wage discrimination, age discrimination and retaliation.  Canon filed a second charge on September 17, 2014, asserting that he had received notice from Kwembe that his contract would not be renewed for the 2014-15 school year.  Canon claimed his non-renewal was in retaliation for his earlier EEOC charge.

According to the complaint, Canon appealed his non-renewal and was reinstated for the 2014-15 school year.  However, in February 2015, he was notified by Kwembe that his contract would not be renewed for the 2015-16 school year.  In the meantime, in mid-October 2014, Canon had received a notice of right to sue on each of his EEOC charges and had commenced the present action on January 6, 2015.  After receiving the notice of non-renewal in February 2015, Canon filed a third EEOC charge, complaining that

he was terminated on account of his national origin and in
retaliation for his two prior EEOC charges.

In its present motion to dismiss, IHL argues that Canon's
complaint against it should be dismissed for failure to state a
claim because it contains no allegations regarding IHL, i.e., it
does not allege that IHL acted, had a duty to act, or had a duty
to supervise the actions of Kwembe, and further because Canon has
failed to exhaust his administrative remedies as to IHL.  Canon
asserts in response to the motion that IHL is a proper defendant
because IHL was his employer.  In fact, however, Canon has not
alleged in his complaint that he was employed by IHL; rather, he
alleges he was employed by JSU.  Moreover, in the court's opinion,
for reasons explained *infra*, as a matter of law, there is no basis
for concluding that IHL was his employer; but even if IHL could
possibly qualify as his employer for some purposes, IHL cannot be
considered Canon's employer for purposes of the claims asserted in
the case at bar and hence is not a proper defendant as Canon has
not alleged that IHL had any involvement whatsoever in the
challenged employment actions.  In addition, IHL is not a proper
defendant as Canon has failed to exhaust as to any claim against
IHL.

Title VII prohibits an "employer" from discriminating against
"any individual ... because of such individual's race, color,
religion, sex, or national origin...."  42 U.S.C.  2000e-2(a).

4

"As Title VII prohibits discrimination in the employment context, see 42 U.S.C. § 2000e-2(a), 2000e-5, generally only employers may be liable under Title VII." <u>Turner v. Baylor Richardson Med. Ctr.</u>, 476 F.3d 337, 343 (5th Cir. 2007) (citing <u>Oden v. Oktibbeha Cnty., Miss.</u>, 246 F.3d 458, 462 (5th Cir. 2001)).  This means that to establish Title VII liability on the part of a particular defendant, the plaintiff must prove both that the defendant meets Title VII's definition of "employer," i.e., "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such a person....," <u>Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dept.</u>, 479 F.3d 377, 380 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e(b)),[3] and "that an employment relationship existed between him and that defendant." <u>Karagounis v. Univ. of Tex. Health Science Center at San Antonio</u>, No. 97-50587, 1999 WL 25015, at *2 (5th Cir. 1999) (citing <u>Deal v. State Farm County Mutual Ins. Co.</u>, 5 F.3d 117, 118 (5th Cir. 1993)).[4] "In the Fifth Circuit, the basic test for deciding whether an employment relationship exists between a worker and his putative

---

[3]    It appears undisputed that both JSU and IHL satisfy this definition.

[4]    Plaintiff has alleged that IHL is a proper defendant in this case because it employed Kwembe, the discriminating supervisor.  However, whether Kwembe was IHL's employee is not the issue.  The issue is whether IHL was plaintiff's employer for in the absence of an employment relationship between *plaintiff* and IHL, IHL cannot be liable to him under Title VII.

employer is the 'hybrid economic realities/common law control' test." <u>Murdock v. City of Houston</u>, Civil Action No. 4:10cv00056, 2011 WL 7109286, at *3 (S.D. Tex. Sept. 21, 2011) (citing <u>Mares v. Marsh</u>, 777 F.2d 1066, 1067-68 (5th Cir. 1985); <u>Deal v. State Farm County Mut. Ins. Co. of Texas</u>, 5 F.3d 117, 119 (5th Cir. 1993); and <u>Fields v. Hallsville Indep. Sch. Dist.</u>, 906 F.2d 1017, 1019 (5th Cir. 1990)).  "The right to control an employee's conduct is the most important component, focusing on the putative employer's right to hire, fire, supervise, and schedule the work.  The economic realities component focuses on whether the alleged employer signed the paycheck, withheld taxes, provided benefits, and set terms and conditions of employment." <u>Id</u>. (citing <u>Deal</u>, 5 F.3d at 119).  It is undisputed that under this test, JSU was plaintiff's employer.  The question, though, is whether IHL was also his employer for purposes of plaintiff's Title VII claim.

The Fifth Circuit has held that "one way to effectively bypass [the] requirement" that a Title VII plaintiff prove an employment relationship with a given defendant "is to prove that the defendant in question is sufficiently interrelated with another defendant.  The plaintiff can show that the two defendants are so integrated so as to be considered a 'single employer.'"  . <u>Karagounis</u>, 1999 WL 25015, at *2 (citing <u>Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.</u>, 380 U.S. 255 (1965)); <u>Trevino v. Celanese Corp.</u>, 701

6

F.2d 397, 403-04 (5th Cir. 1983) (holding that "[S]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer."). "The plaintiff can also show that the defendant in question exercises such control over the labor relations of the other defendant that they together should be considered 'joint employers.'" Id. (citing Boire v. Greyhound Corp., 376 U.S. 473 (1964); Trevino, 701 F.2d at 403).[5] However, in a succession of cases, the Fifth Circuit has stated that neither of these theories applies to governmental subdivisions. See Trevino, 701 F.2d at 404 n.10 (stating that the integrated enterprise or single employer standard "is not readily applicable to governmental subdivisions") (citing Dumas v. Town of Mt. Vernon, 612 F.2d 974,

_____

        [5]     In Karaqounis, the court explained these theories,
stating:
        It is important to remember that the two theories are
        very closely related.  When determining whether two
        defendants should be considered a single employer, we
        look to four factors: (1) interrelation of operations;
        (2) centralized control of labor relations; (3) common
        management; (4) and common ownership or financial
        control.  See Trevino, 701 F.2d at 404.  The second
        factor of this inquiry is by far the most important.
        See id.  Similarly, when determining whether two
        defendants should be considered a joint employer, we
        look to the control one defendant has over the other's
        labor relations.  In other words, the core analysis of
        these two inquiries are virtually identical.
Karaqounis v. Univ. of Tex. Health Science Center at San Antonio,
No. 97-50587, 1999 WL 25015, at *2 (5th Cir. 1999) (additional
citations omitted).

979 n.9 (5th Cir. 1980)); <u>Karaqounis</u>, 1999 WL 25015, at *2
(stating that based on the similarities between the single
employer and joint employer theories, "we are constrained by
<u>Trevino</u> to hold that the governmental subdivision rule we applied
within the single employer doctrine also applies to the joint
employer theory"); <u>Turner</u>, 476 F.3d at 344 (holding that "a
government employer ... may not be considered part of an
integrated enterprise under the <u>Trevino</u> framework"); <u>Garrett-
Woodberry v. Miss. Bd. of Pharmacy</u>, 300 Fed. App'x 289, 291 (5th
Cir. 2008) (stating, based on <u>Dumas</u>, <u>Trevino</u>, <u>Karaqounis</u> and
<u>Turner</u>, that "it seems clear that the 'single employer' test
should not be applied here, as the Board is a state agency and is
thus a governmental subdivision"). Notwithstanding that a number
of these opinions have been unpublished and/or that their
statements regarding the inapplicability of the single employer
and/or joint employer theories to governmental entities have been
*dicta*, district courts in this circuit have held, nearly
uniformly, that these doctrines do not apply to governmental
entities.[6]

_____

  [6] <u>See</u>, <u>e.g.</u>, <u>Murdock v. City of Houston</u>, Civ. Action No.
4:10-CV-00056, 2011 WL 7109286, at *3 (S.D. Tex. Sept. 21, 2011)
(observing that while <u>Karaqounis</u>, an unpublished decision, "is not
binding precedent under the Fifth Circuit's own rules," and that
"a future panel of that court might easily be persuaded to reach a
contrary result[,] ... until that day arrives, this lower court
bows to the unambiguous holding of our court of appeals, and
recommends that summary judgment be granted" on the basis that the

The only exception, it appears, is <u>Patterson v. Yazoo City Mississippi</u>, 847 F. Supp. 2d 924 (S.D. Miss. 2012), in which Judge David Bramlette, after determining that there was no *binding* Fifth Circuit authority foreclosing application of a single employer test to governmental entities, concluded there was "no apparent reason why the <u>Trevino</u> test, or some other analogous test better suited for its purpose, should not apply to government entities since there is no question that Congress intended for private and public employees to enjoy similar protections under Title VII." <u>Id</u>. at 939. <u>See also</u> <u>Patterson v. Yazoo City, Miss.</u>, Civ. Action No. 5:10-CV-00153-DCB-JMR, 2012 WL 930927, at *1 (S.D. Miss. Mar. 19, 2012) (subsequent opinion reiterating conclusions that "(1) application of the <u>Trevino</u> single-employer test is not foreclosed by case law and (2) there is no good policy reason why

---

joint employer doctrine is not applicable to government subdivisions); <u>Epie v. Owens</u>, Civ. Action No. 3:09-CV-1681-D, 2010 WL 5620959,at * 4 n.1 (N.D. Tex. Dec. 21, 2010) (observing that the Fifth Circuit has declined to apply the single employer analysis to governmental agencies or subdivisions and held that the joint employer test likewise does not apply to governmental subdivisions); <u>Myers v. Miss. Office of Capital Post-Conviction Counsel</u>, 720 F. Supp. 2d 773, 778 (S.D. Miss. 2010) (observing that "the Fifth Circuit does not apply 'single employer' analysis to governmental employers"); <u>Ridha v. Texas A & M Univ. Sys.</u>, Civ. Action No. 4:08-CV-2814, 2009 WL 1406355, at *4 (S.D. Tex. May 15, 2009) (directing the parties to "Fifth Circuit authority holding that 'integrated enterprise' and 'joint employer' theories do not apply to government employers such as the University Defendant."); <u>Gogreve v. Downtown Dev. Dist.</u>, 426 F. Supp. 2d 383, 389-90 (E.D. La. 2006) (holding that under Fifth Circuit authority, the "joint employer" test is not appropriate to analyze the relationship between governmental subdivisions).

[a plaintiff] should not be able to proceed against governmental entities under a single-employer theory of liability."). Judge Bramlette's conclusion that the single-employer theory could (and should) apply to governmental defendants stemmed, in large part, from a concern that without it, there was no alternative standard in this circuit for determining "how interrelated political subdivisions should be treated for the purposes of liability." Id. at 936. See also id. at 939 (stating that "precedent in this case seems shaped more by the lack of a suitable test than underlying policy"). Citing Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761 (5th Cir. 1997), he concluded that the "hybrid economic realities/common law control" test, which focuses on the right to control, does not apply to the relationship between multiple employers-defendants but instead applies only to determine "whether the plaintiff and a single defendant-employer have an employer-[employee] relationship." 847 F. Supp. 2d at 933 ("Put simply, the Trevino test applies to the relationship between multiple employers-defendants, and the hybrid test applies solely to the relationship between the plaintiff and a single employer-defendant.").[7] And, since he perceived "no apparent

---

[7]    As noted in Patterson, in Schweitzer, the Fifth Circuit stated:
        [T]he hybrid test should be used as an initial inquiry
        to resolve, if need be, whether a plaintiff is an
        employee of the defendant (or one of the defendants, in
        a multi defendant case) for the purposes of Title VII.

reason" why the single-employer test should not apply to governmental entities, he concluded that it could be applied.  <u>Id</u>.

There may be cause to question whether any cogent reason exists why a governmental entity could not share control with another over an employee's work.  <u>See</u> <u>Patterson</u>, 847 F. Supp. 2d at 933 ; <u>Murdock</u>, 2011 WL 7109286, at *7 (finding "no cogent reason has been offered why a government entity, like any general contractor, could not share or co-determine with a private sub-contractor the control over an employee's work").  And there may be validity to the court's concerns in <u>Patterson</u> regarding the lack of an alternative test to the single employer or joint employer test for evaluating whether interrelated governmental entities could qualify as employers under Title VII.  However, given that the Fifth Circuit has repeatedly expressed the view that these theories do not apply to governmental subdivisions, this court finds that IHL cannot be found to be an "employer" under either the single employer or joint employer test.

---

    If the plaintiff is found to be an employee of one of
    the defendants under the hybrid test, but questions
    remain whether a second (or additional) defendant is
    sufficiently connected to the employer-defendant so as
    to be considered a single employer, a <u>Trevino</u> analysis
    should be conducted.
<u>Schweitzer v. Advanced Telemarketing Corp.</u>, 104 F.3d 761 (5th Cir. 1997), quoted in <u>Patterson v. Yazoo City, Miss.</u>, 847 F. Supp. 2d 924, 934 (S.D. Miss. 2012).

That said, for reasons which follow, the court is of the opinion
that in view of the allegations in Canon's complaint and in light
of the specific employment decisions he challenges as violative of
Title VII, as a matter of law, IHL could not be found to be his
employer under any theory.

In <u>Trevino</u>, the court explained the single employer test,
stating:

> [S]uperficially distinct entities may be exposed to
> liability upon a finding that they represent a single,
> integrated enterprise: a single employer.  Factors
> considered in determining whether distinct entities
> constitute an integrated enterprise are (1)
> interrelation of operations, (2) centralized control of
> labor relations, (3) common management, and (4) common
> ownership or financial control.
>     Courts applying this four-part standard in Title
> VII and related cases have focused on the second factor:
> centralized control of labor relations.  This criterion
> has been further refined to the point that "[t]he
> critical question to be answered then is:  What entity
> made the final decisions regarding employment matters
> related to the person claiming discrimination?"

<u>Trevino</u>, 701 F.2d at 403-04 (citations omitted).

Though related, IHL and JSU are separate legal entities.
"[T]he individual universities are considered to be
separate agencies themselves."  Miss. A.G. Op. <u>Bryant</u>, No. 97-0055
(Feb. 7, 1997).  IHL was created by the Mississippi constitution
to oversee Mississippi's state colleges and universities,
including JSU.  <u>Bd. of Trustees of State Institutions of Higher
Learning v. Ray</u>, 809 So. 2d 627, 630 (Miss. 2002); Miss. Const.
Art. 8 § 213-A; <u>see also</u> <u>Jackson HMA, LLC v. Miss. State Dept. of</u>

Health, 98 So. 3d 980, 981 (Miss. 2012) (IHL is a constitutionally created body vested with "management and control" over Mississippi's institutions of higher learning); Washington v. Jackson State Univ., 532 F. Supp. 2d 804, 814 (S.D. Miss. 2006) (JSU is a public university created by statute and placed under the auspices of IHL) (citing Miss. Code Ann. § 27-125-1, *et. seq.* & § 37-101-1).  By legislative enactment, IHL has been given wide latitude and discretion in decisions concerning its management and control of the universities and colleges "in areas of finance allocation, physical facilities, degree programs and policy, admission standards, employment and student problems."  Bd. of Trustees of State Institutions of Higher Learning v. Miss. Publishers Corp., 478 So. 2d 269, 273-74 (Miss. 1985) (citing Miss. Code Ann. § 37-101-1 through 15).  With respect to matters of employment, Mississippi Code Annotated provides that IHL:

> shall have the power and authority to elect the heads of
> the various institutions of higher learning and to
> contract with all deans, professors, and other members
> of the teaching staff, and all administrative employees
> of said institutions for a term of not exceeding four
> (4) years.  The board shall have the power and authority
> to terminate any such contract at any time for
> malfeasance, inefficiency, or contumacious conduct, but
> never for political reasons.  It shall be the policy of
> the board to permit the executive head of each
> institution to nominate for election by the board all
> subordinate employees of the institution over which he
> presides.  It shall be the policy of the board to elect
> all officials for a definite tenure of service and to
> reelect during the period of satisfactory service.  The
> board shall have the power to make any adjustments it
> thinks necessary between the various departments and

schools of any institution or between the different
institutions.

Miss. Code Ann. § 37-101-15(f). "Because of this framework, an
employment contract with a state university 'cannot exist unless
and until the [IHL] approves a nomination by the university's
president .... [and] this is the only valid avenue for the
creation of a valid contract for employment.'" Mawson v. Univ. of
Miss. Med. Ctr., Civil Action NO. 3:11CV574-DPJ-FKB, 2012 WL
6649323, at *4 (S.D. Miss. Dec. 20, 2012) (citing Whiting v. Univ.
of S. Miss., 62 So. 3d 907, 916 (Miss. 2011)); Lakshman v. Mason,
486 F. Supp. 2d 574, 580-81 (S.D. Miss. 2006) (holding that IHL
"solely has the power to contract with professors"). Thus,
plaintiff's employment contract is with IHL.

However, while by law, only IHL may contract with employees
of state universities, IHL is not directly involved in all
university employment matters. Rather, as set forth in the IHL
Board of Trustees Policies & Bylaws (Bylaws), while IHL has
established policies and standards relating to university
employment matters and has retained authority over decisions
respecting certain employment decisions, such as "the award of
tenure, the final, involuntary separation of an employee to be
effective during the term of an employment contract, and where
applicable creation, elimination, or modification of categories of
appointments as approved by the Board," IHL Bylaws 401.0102, it

14

has delegated all other employment decisions – including,
specifically, the non-renewal of non-tenure track faculty – to the
universities.[8]  IHL Bylaws state:

> Universities are authorized to establish faculty
> positions designated as nontenure track positions.
> Universities may enter into renewable contracts, for
> periods up to four years in length, with non-tenure
> track faculty members in three separate categories –
> research, teaching, and service – based on the mission
> and needs of the institution.  Each institution
> employing non-tenure track faculty will have a formal
> system of annual evaluations to assess each such faculty
> member's performance.  Renewal of contracts is not
> guaranteed and will be determined by the institution on
> the basis of the faculty member's performance,
> availability of funding, and institutional priorities.

Id. at 404.01.  The Bylaws further provide that "[e]ach
institution of higher learning shall be under the management and
control of an Institutional Executive Officer" appointed by IHL,
see IHL Bylaws IHL Bylaw 201.0505, and they prescribe an intra-
university appeal process for grievances by non-tenured track
faculty relating to employment matters which clearly state that
"the decision of the Institutional Executive Officer shall be
final," Id. at 405.02.[9]

_____

[8]    The Fifth Circuit has held that it is "clearly proper in
deciding a 12(b)(6) motion to take judicial notice of matters of
public record."  Norris v. Hearst Trust, 500 F.3d 454, 461 n.9
(5th Cir. 2007).

[9]    The Bylaws, at 405.02 state:
If all previous steps have not led to a satisfactory
settlement of a problem, the Chief Personnel Officer
will place it before the university grievance committee.
The committee's purpose is to review the problem

Canon's complaint in this case is that based on his Iranian national origin and because he complained about Kwembe, his supervisor at JSU, he was given poor evaluations, subjected to harassment, paid lower wages, and ultimately, non-renewed for employment at JSU.  It bears repeating that Canon has not alleged that IHL was his employer or that IHL was in any way, directly or indirectly, involved in any of these actions or decisions of which he complains.  Rather, according to the allegations of his complaint, Kwembe was the perpetrator of all these alleged wrongs. Thus, even if a single employer test were applicable, the facts alleged by Canon foreclose any claim that IHL would qualify as his "employer" under this test.

For the same reason, neither could IHL be considered an "employer" under the joint employer test, which is essentially indistinguishable from the single employer test and ultimately focuses on the question "which entity made the employment decisions" regarding the plaintiff employee.  See Skidmore, 188 F.3d 606, 617 (5th Cir. 1999).  Moreover, the Fifth Circuit has

thoroughly and make a decision which is appealable to
the Institutional Executive Officer.  Upon completion of
the hearing, the committee will have five (5) working
days in which to make a decision.  The decision will be
promptly communicated within five (5) working days to
the employee and the administration in writing.  The
decision of the committee will be subject to review by
the Institutional Executive Officer.  The decision of
the Institutional Executive Officer shall be final.

16

recently held that "'establishing a "joint employer" relationship does not (automatically) create liability in the co-employee for actions taken by the other employer.'" Burton v. Freescale Semiconductor, Inc., – F.3d –, 2015 WL 4742174, at *4 (5th Cir. 2015) (parenthetical added) (quoting Whitaker v. Milwaukee Cnty., 772 F.3d 802 (7th Cir. 2014)). Rather, "a joint employer must bear some responsibility for the discriminatory act to be liable for [a] ... violation." Id. See Whitaker, 777 F.3d at 803 (where Milwaukee County and state's Department of Human Services were alleged to be "joint employers," the court found that Milwaukee County could not be liable because it "had no involvement in" the employment decisions underlying the plaintiff's claims and "no authority to override those decisions"). As there is no allegation or basis for an allegation that IHL had any involvement in the employment decisions at issue in this case, it can have no liability to plaintiff under Title VII.

Even if plaintiff had arguably alleged a basis for concluding that IHL was his employer as to the claims asserted herein, the court would still find that dismissal was in order as he did not exhaust his administrative remedies as to IHL prior to filing suit. "A plaintiff alleging workplace discrimination must exhaust his administrative remedies before he may sue under ... Title VII...." Castro v. Texas Dept. of Criminal Justice, 541 Fed. App'x 374, 379 (5th Cir. 2013); see also Taylor v. Books A

17

Million, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.  Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.").

The Fifth Circuit has "recognize[d] a general rule that 'a party not named in an EEOC charge may not be sued under Title VII.'"  E.E.O.C. v. Simbaki, Ltd., 767 F.3d 475, 481 (5ᵗʰ Cir. 2014) (quoting Way v. Mueller Brass Co., 840 F.2d 303, 307 (5th Cir. 1988)).  This naming requirement serves to put the named party on notice of a claim against it before a lawsuit is filed, thus permitting that party to resolve the claim by conciliation and voluntary compliance.  Id. at 482 (citation omitted).  "When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks."  Id. at 481 (citations omitted).

In Simbaki, the court, undertaking to lay out exactly the exceptions to the named-party requirement, set forth two standards for determining whether an unnamed party may be sued under Title VII.  The first test is whether there is a "sufficient identity-of-interest between the named and the unnamed party so that the unnamed party could be sued in court despite not being named in the charge."  Id. at 482 (citing Glus v. G.C. Murphy Co.,

18

562 F.2d 880 (3d Cir. 1977)).  The second test recognizes that "certain parties with actual notice of the EEOC proceedings may also be sued[,]" so that "if 'an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance,' the purpose of the named-party requirement has been accomplished, and 'the charge is sufficient to confer jurisdiction over that party[,]'" Id. at 483 (quoting Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 905 (7th Cir. 1981)).

IHL clearly takes the position in its motion that Canon, as is plain from the face of his complaint, did not name IHL as a respondent in any of his three EEOC charges and thus failed to exhaust as to IHL, therefore entitling IHL to be dismissed from this lawsuit.  Plaintiff's response does not even acknowledge, much less address this contention or suggest any basis upon which it might reasonably be found that he did exhaust.  Accordingly, the court finds that IHL is entitled to be dismissed on account of plaintiff's failure to exhaust.[10]

---

[10]    While there is some uncertainty whether dismissal of a Title VII claim for failure to exhaust should be under Rule 12(b)(1) or Rule 12(b)(6), it is clear that cases filed in the Fifth Circuit are subject to dismissal for failure to exhaust under Rule 12.  Chhim v. University of Houston Clear Lake, – Fed. Supp. 2d –, 2015 WL 5252673, at *6 n.8 (S.D. Tex. Sept. 9, 2015) (citations omitted).

In conclusion, based on all of the foregoing, the court concludes that IHL's motion to dismiss is well taken. Accordingly, it is ordered that the motion is granted.

SO ORDERED this __22nd__ day of September, 2015.


/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE